No. 20,050.

VICTOR HENRY, a Minor, etc., *Appellee,* v. THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

COAL MINING—*Failure to Keep Props in Easy Access to Miner—Negligence—Injuries.* The furnishing of prop timber at a point half a mile from the place where miners are working is not a compliance with the statutory requirement that those in charge of a coal mine shall keep in easy access to the miner props of suitable length and size for the places where they are to be used, although a miner may obtain them in accordance with a custom in the mine by requesting a driver who may pass his room to select the props at the place where they are kept and bring them when he returns from depositing his load of coal.

Appeal from Crawford district court; ANDREW J. CURRAN, judge. Opinion filed April 8, 1916. Affirmed.

*W. W. Brown, James W. Reid,* both of Parsons, and *D. H. Woolley,* of Girard, for the appellant.

*C. A. McNeill,* of Columbus, and *C. S. Denison,* of Pittsburg, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an appeal from a judgment secured by Victor Henry, a minor, against the defendant railway company for damages sustained as a result of a large rock falling upon him while at work in one of the rooms of the defendant's coal mine in Cherokee county.

It was alleged in the petition that the injury was caused by the failure of the defendant to comply with the provisions of section 4987 of the General Statutes of 1909, requiring mines to be supplied with prop timbers of suitable length and size, and easy of access; and that if such timbers had been properly placed at the disposal of the plaintiff he could have used them to prevent the rock from falling upon him. The answer of the defendant alleged that at the time of the accident there was a supply of these prop timbers kept at a certain location in the mine in accordance with a custom common to all such mines and known to and acquiesced in by the plaintiff, under which a miner working in a room of a mine was to notify the owner or operator of the mine when he needed prop timbers at the place in which he was working. It was further alleged that the defendant never received any request for such timbers from the plaintiff before the accident occurred and did not know that the plaintiff had any need of them; and that the injuries suffered by the plaintiff were due in whole or in part to his own negligence.

The rock, about three thousand pounds in weight, which injured the plaintiff had been embedded in the roof of the chamber or room where he was working, and about three days before the accident occurred, noticing that it was loose, he made an unsuccessful attempt to pull it down. He testified that he notified the superintendent of the mine of the condition of the roof and asked for timbers to prop it up, specifying the kind wanted, and the superintendent said, "All right," but did not furnish any, and he said that he made no attempt other than this to get the prop timbers for his room. In the testimony of the superintendent he denied that he had had any conversation with the plaintiff with regard to the condition of the roof of the room. It seems that the supply of prop timbers for the mine was kept at a place called the "parting," which is

the place where the drivers deposit their loads and take back their empties, and ordinarily when a miner needs props he asks the driver as he passes the room to bring him the size and kind wanted, and the latter goes to the parting where the props are kept, selects the proper ones, and leaves them in front of the miner's room on his return trip. This parting is about half a mile from the room where the plaintiff was working. The plaintiff testified that he knew where the props were situated and how to get them, but that he made no attempt to procure them except when he notified the superinendent that he needed them. There was testimony that after the accident some props were seen near the plaintiff's room, as well as eight or ten in a breakthrough across the way from his room, and the superintendent testified that those in the breakthrough had been there for three or four weeks. A witness of experience in mining testified that in his opinion it would not have been good practice to have timbered the rock but that it should have been taken down.

The principal question upon which the parties divided is whether there was a reasonable compliance with the statutory provision requiring the owner, agent or operator of a coal mine to supply mines with prop timbers of suitable length and size and kept within easy access. (Gen. Stat. 1909, § 4987.) Under this statute providing for the health and safety of miners, an owner, lessee or operator of a mine is liable for any injury suffered by the miner resulting from a violation of the act or a willful failure to comply with its provisions. (Gen. Stat. 1909, § 4992.) In respect to a compliance with the statute it has been said:

"No voluntary act in violation of the statute is excused, and no inaction where the statute requires something to be done is excused unless it be involuntary. In the case of omissions neither bad purpose nor determined obstinacy is required, and one charged with the duty to observe the statute, who intentionally suffers mining operations to proceed without taking prescribed precautionary measures when the circumstances demand that they should be taken, is guilty of a willful failure within the meaning of the law." (*Cheek v. Railway Co.*, 89 Kan. 247, 267, 131 Pac. 617.)

Were the props which were kept at the parting about half a mile from the room where the plaintiff was working and which he could have obtained upon a request of a driver, who would

have brought them on his return for another load, within easy access? The principal purpose of the requirement to keep props within easy access was the safety of the miners, but that was not the only consideration. It has been said that "these props are placed within convenient reach of the miner, so that he can get them and put them in proper place, when needed, without unreasonable loss of time." (*Ozorkiewicz v. Carr*, 83 Kan. 473, 474, 112 Pac. 135.) Ordinarily the compensation of the miner is measured by the quantity of coal mined by him, and delay occasioned by waiting for props to be brought by drivers would proportionately diminish the coal mined and the miner's compensation. Although plaintiff could have obtained props by that means it would have been necessary for him to await the coming of a driver, and, after the request was made, to wait until the driver took his load to the parting, a distance of half a mile, and when the load was dumped and the props obtained and loaded on the car he must still wait and lose the time it takes for the return trip. After learning of the necessity of the props and requesting that they be furnished the miner must either suspend his work and lose the time that will elapse while waiting for the bringing of the props or risk the danger of falling rocks, slate or earth while at work. In making this requirement the legislature evidently intended that props should be within easy reach of the miner in order that there should be no loss of time, and certainly it did not intend that miners should work under a defective or dangerous roof.

It has been held that the obligation imposed by the statute with reference to props is not conditioned upon the making of a demand for them by the miner. (*LeRoy v. Railway Co.*, 91 Kan. 548, 138 Pac. 646.) Ordinarily it is a question of fact for the determination of the jury whether the props furnished are of easy access to the miner, and under the testimony and finding it must be held that no props were kept for the miner nearer than the parting. Assuming, as we must, that suitable props were kept at the parting, and that in accordance with the practice in the mine props could have been obtained by the miner upon request of the drivers, it must be held that the props were not within easy access to the miner and that the method used by the defendant did not constitute a reasonable compliance with the statutory requirement. The instructions

of the trial court accord with the view which we have taken of the question, and nothing substantial is found in the objections to the instructions or to the rulings in the admission of testimony.

The judgment of the district court is affirmed.

PORTER, J., and DAWSON, J., dissent.